UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JANET CAPRON, as the personal
representative of the Estate of
JILL S. CAPRON, deceased, a/a/o
Carlton Towers Partners, LLC,**

    **Plaintiff,**

    **v.**                                                      **Case No: 8:09-CV-2506-T-23AEP**

**STEADFAST INSURANCE COMPANY,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on Defendant Steadfast Insurance Company's ("Steadfast") **Motion to Dismiss** (Dkt. No. 3). Plaintiff Janet Capron filed a Response in opposition to the Motion to Dismiss (Dkt. No. 7) and Steadfast filed a Reply Brief (Dkt. No. 12). The Court has carefully reviewed the Motion to Dismiss, the Response, and the Reply, and is otherwise fully advised in the premises. For the reasons stated below the Court recommends that the Motion to Dismiss be **DENIED**.[1]

    **I.**    *Factual Background*

On November 11, 2009, Plaintiff filed a Complaint as the assignee of Carlton Towers Partners, LLC, in the Circuit Court for Pinellas County alleging breach of contract against Steadfast. (Dkt. No. 2.) Steadfast removed the case to this Court on December 11, 2009. (Dkt.

---

[1] Steadfast's Motion to Dismiss (Dkt. No. 3) was referred to the undersigned by the Honorable Steven D. Merryday (Dkt. No. 13).

No. 1.) Plaintiff alleges that Steadfast, as the insurer for Carlton Towers, breached the insurance policy between Steadfast and Carlton Towers by refusing to defend Carlton Towers and denying coverage for claims arising from the death of Ms. Jill Capron ("Ms. Capron"). (Dkt. No. 2 ¶¶ 15-17.) Plaintiff alleges that Ms. Capron died due to the negligence of Carlton Towers. (*Id.* ¶ 14.) Carlton Towers' insurance policy with Steadfast provided that Steadfast would "pay those sums that the insured becomes legally obligated to pay as 'damages' because of 'bodily injury' and 'property damage' to which [the] insurance applies, and [Steadfast] will have the right and duty to defend the insured against any 'suit' seeking those 'damages.'" (*Id.* ¶ 12.) Plaintiff further alleges that Carlton Towers timely notified Steadfast of the claims made against it by the Estate of Ms. Capron, but that Steadfast denied coverage for the claims and refused to defend Carlton Towers. (*Id.* ¶¶ 16-17.) On August 6, 2009, the Estate of Ms. Capron obtained a final judgment against Carlton Towers in the underlying suit[2] in the amount of $1,000,000.00, whereupon Carlton Towers assigned all of its rights in the policy to Plaintiff. (*Id.* ¶¶ 18-19.)

The pertinent facts with respect to the underlying suit, as alleged in that complaint and which must be accepted as true for purposes of this Motion, are as follows. Ms. Capron resided in Unit 814 located on the eighth floor of the Carlton Towers located in St. Petersburg, Florida. (Dkt. No. 5, Ex. 1 ¶¶ 15, 19.) On June 5, 2005, a Freon gas leak occurred in the mechanical room located on the ground floor of the Carlton Towers causing damage to a hot water boiler. (*Id.* ¶¶

---

[2] Hereinafter, references to the "Complaint" pertain to this case between Plaintiff and Steadfast (Dkt. No. 2). References to the "underlying suit," "underlying complaint," or "complaint" pertain to the earlier state action filed in the Circuit Court for Pinellas County under Case No. 06-4327-CI, by the Estate of Ms. Capron against Carlton Towers, et al. (Dkt. No. 5, Ex. 1).

14, 16-17.) The damage to the hot water boiler caused it to malfunction and emit dangerously high levels and concentrations of carbon monoxide gas that were vented into a chimney flue. (*Id.* ¶ 17.) The chimney flue was used to ventilate exhaust gas from the heaters and hot water boiler in the mechanical room and ran directly through Ms. Capron's unit. (*Id.* ¶¶ 9, 15.)

Additionally, Carlton Towers had previously undertaken efforts to make improvements and convert the building Ms. Capron lived in from apartments to condominiums. (*Id.* ¶¶ 11-12.) During this process, Carlton Towers hired a contractor to install internet cable in the residential units, including Unit 814. (*Id.* ¶¶ 11-12.) During the installation of internet cable in Ms. Capron's home, holes were drilled into the chimney flue. (*Id.* ¶ 12.)

As a result of the malfunctioning hot water boiler and the openings into the chimney flue resulting from the negligent installation of internet cable, Ms. Capron was exposed to dangerously high levels and concentrations of carbon monoxide gas and subsequently died on August 17, 2005. (*Id.* ¶¶ 19-20.)

## II. *Applicable Legal Standards*

Rule 8 of the Federal Rules of Civil Procedure specifies that a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). If the complaint fails to state a claim upon which relief may be granted, a motion to dismiss may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). "While a complaint

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Plaintiff must plead enough facts to state a plausible basis for the claim. *Id.*; *see also James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) ("To survive dismissal, 'the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed'") (*quoting Twombly*, 550 U.S. at 555-56). Additionally, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### III.   *Discussion*

Steadfast's Motion to Dismiss is premised on three grounds. First, Steadfast argues that the Complaint is deficient because it fails to allege sufficient facts concerning the alleged covered loss to state a claim for breach of contract. (Dkt. No. 3 at 6.) Next, Steadfast claims that as a matter of law the case should be dismissed because the alleged loss in the underlying complaint filed against Carlton Towers is not a covered loss under the Total Pollution Exclusion of the

4

insurance policy. (*Id.* at 9-12.) Last, Steadfast asserts that the Complaint fails to sufficiently allege facts that Carlton Towers is an insured under the policy. (*Id.* at 13.)

Based upon the nature of Steadfast's arguments, the Court finds it appropriate to first address the issue regarding whether the complaint filed in the underlying suit between Plaintiff and Carlton Towers reveals that there is no coverage as a matter of law, and then address whether Plaintiff alleged sufficient facts in this case to assert a breach of contract claim. In order to properly examine the first issue the Court must determine whether the underlying complaint invoked Steadfast's duty to defend in light of the insurance policy issued to Carlton Towers. The Court finds that it is proper to consider the contents of the underlying complaint in deciding the instant Motion to Dismiss. Although it was not attached to the Complaint, the suit was referred to in Plaintiff's Complaint and it is central to her claims. Moreover, Steadfast has requested that the Court take judicial notice of the underlying complaint. (Dkt. No. 3 at 7.) Finally, Plaintiff has not challenged its authenticity or objected to the request. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280-81, n.16 (11th Cir. 1999) (holding district courts are authorized to consider authentic documents on a motion to dismiss if they are referred to in the plaintiff's complaint and are central, or integral, to his claim). As explained by the court in *Avado*:

> the rationale is that when a plaintiff files a complaint based on a document but fails to attach that document to the complaint, the defendant may so attach the document, and therefore, the document, as one that could have or rather in fairness should have been attached to the complaint, is considered part of the pleadings and thus may be reviewed at the pleading stage without converting the motion into one for summary judgment.

*Id.*

Thus, in order to properly evaluate Steadfast's argument that this case should be dismissed as a matter of law, the Court must examine and evaluate the underlying complaint between Plaintiff and Carlton Towers. Additionally, as an initial matter, the Court must determine whether Florida or Texas law applies to the insurance policy at issue. Here, the policy was issued in Texas, but the death of Ms. Capron occurred in Florida. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

In a diversity case, a federal court must apply the choice of law rules of the state in which it is located. *See Klaxton Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997). Thus, the Court must apply Florida's choice of law rules. In determining which state's law applies to contracts, Florida "has long adhered to the rule of lex loci contractus." *State Farm Mut. Auto Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006). "That rule, as applied to insurance contracts, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *Id.* (*citing Sturiano v. Brooks*, 523 So.2d 1126, 1129 (Fla. 1988)). A departure from the lex loci rule may be made for the purposes of public policy. *Id.* at 1165. To do so, however, requires both a Florida citizen in need of protection and a paramount Florida public policy. *Id.*

Here, Steadfast asserts that Texas law should apply while Plaintiff neither argues for or against the application of a particular state's law. Indeed, Steadfast states, and the Court agrees, that Florida law and Texas law are similar in most respects with respect to the issues in dispute in this case. However, the Court finds that under Florida's choice of law rules, Texas law would

6

apply to the instant insurance policy. As noted by Steadfast, an examination of the policy reveals that it was issued to ARM Properties at a Texas address.[3] (Dkt. No. 2, Ex. 1 at 1.) Moreover, the Policyholder Notice, which is the only state-specific endorsement in the policy, indicates that Texas state law was contemplated by the parties. (*Id.* at 50.) Finally, the Court does not find any compelling reason to apply Florida law under the public policy exception. Therefore, the Court will apply the state law of Texas to the instant matter.

> **A. Whether the Underlying Complaint States Sufficient Facts to Support a Claim for Breach of Contract for Steadfast's Refusal to Defend.**

Steadfast's Motion to Dismiss argues that the complaint filed in the underlying suit between Plaintiff and Carlton Towers failed to contain allegations that would invoke a duty to defend or indemnify as a matter of law. (Dkt. No. 3 at 7.) Specifically, Steadfast contends that since the underlying complaint alleges that Ms. Capron's death was caused by carbon monoxide poisoning, it did not have a duty to defend because policy coverage would be excluded in such circumstances under the Total Pollution Exclusion contained in the insurance policy. (*Id.* at 5.)

Plaintiff responds that the allegations in the underlying complaint do not preclude coverage because there is a "hostile fire" exception to the Total Pollution Exclusion. (Dkt. No. 7 at 15.) Plaintiff argues that the underlying complaint indicated the carbon monoxide was produced from a malfunctioning hot water boiler, and that potentially an unintended or accidental fire created the dangerously high levels of carbon monoxide that killed Ms. Capron. (*Id.* at 17.)

---

[3] The policy further reflects that coverage is provided for the property located at the address of Carlton Towers.

7

### 1. Applicable Law for Determining Whether an Insurance Company has a Duty to Defend.

Texas follows the 'eight-corners' rule of insurance contract interpretation.

> The insurer's duty to defend is determined by the underlying plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations. If the pleadings allege facts stating a cause of action potentially falling within the insurance policy's scope of coverage, the insurer has a duty to defend. Doubtful cases will be resolved in favor of the insured. The insured party bears the initial burden of showing that there is coverage, while the insurer bears the burden of showing that any exclusion in the policy applies.

*Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 645-46 (5th Cir. 2008).

As the Fifth Circuit has recognized, the rule is very favorable to insureds because doubts must be resolved in the insured's favor:

> [w]here the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.

*Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.,* 538 F.3d 365, 368-69 (5th Cir. 2008) (*citing Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex. 1997)) (holding that, even under a liberal construction, the allegations in that petition did not fall within any potential coverage); *see also King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 187 (Tex. 2002) ("[W]e resolve all doubts regarding the duty to defend in favor of the duty."). Thus, the

8

law is clear – when there is a doubt, it is the insured's duty to defend. *Gore Design*, 538 F.3d at 369.

In determining a liability insurer's duty to defend, the court may not read facts into the pleadings, look outside pleadings, or imagine factual scenarios that might trigger coverage. *Nautilus Ins. Co. v. ACM Contractors, Inc.*, 549 F. Supp. 2d 857, 864 (S.D. Tex. 2008). However, the court is not required to ignore those inferences logically flowing from the facts alleged in the complaint from the underlying suit against the insured. *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs., Inc.*, 252 S.W.3d 450, 456 (Tex. App. 2008) (*citing Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 645 (Tex. 2005)). In other words, the court may draw inferences from the complaint that may lead to a finding of coverage. *Id.*

**2. Application of the Law to the Allegations of the Underlying Complaint In Light of the Insurance Policy.**

The underlying complaint provides that Carlton Towers was responsible for the management and maintenance of the residential building where Ms. Capron lived. (Dkt. No. 5, Ex. 1 ¶ 9.) Carlton Towers was also responsible for the mechanical equipment located on the ground floor that provided air conditioning, heating, and hot water throughout the residential building. (*Id.*) Additionally, Carlton Towers was responsible for the maintenance of the chimney flue that was used to ventilate exhaust gas from the heaters and hot water boiler in the mechanical room through the interior of the building. (*Id.*) The flue passed directly through Unit 814, where Ms. Capron resided, to the roof. (*Id.* ¶ 15.)

As explained previously, *see supra* Part I, during the installation of internet cable in Ms. Capron's home, holes were drilled into the chimney flue. (*Id.* ¶ 12.) A Freon gas leak in the

9

mechanical room damaged the hot water boiler causing it to malfunction and emit dangerously high levels and concentrations of carbon monoxide gas that were vented into the chimney flue. (*Id.* ¶ 17.) As a direct and proximate result of the damaged, malfunctioning hot water boiler and the openings into the chimney flue, dangerously high levels and concentrations of carbon monoxide gas were vented into Ms. Jill Capron's home located in Unit 814. (*Id.* ¶ 19.) Ms. Capron was exposed to the carbon monoxide gas causing her injury and death on August 17, 2005. (*Id.* ¶ 20.)

Steadfast maintains that the allegations in the underlying complaint did not invoke its duty to defend because coverage was excluded under the insurance policy's Total Pollution Exclusion. The Total Pollution Exclusion provides:

> This insurance does not apply to:
>
> f. Pollution
>    (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.
>
>    This exclusion shall not, however, apply to heat, smoke or fumes from a hostile fire, provided that the hostile fire does not arise or occur:
>
>    (a) at any premises, site or location which was at any time used for the handling, storage, disposal, processing or treatment of waste; or
>
>    (b) in connection with waste or materials that were at any time treated, stored, disposed of, transported or processed as waste.
>
>    As used in this exclusion:
>
>    Pollutants means any solid, liquid, gaseous or thermal irritant, or contaminant, including smoke, vapor, soot, fumes, acids, alkalis,

> chemicals and waste. Waste includes materials to be recyc1ed, reconditioned or reclaimed.
>
> Hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(Dkt. No. 2, Ex. 1 at 33.) While carbon monoxide is not specifically listed as a pollutant in the policy, Steadfast asserts that carbon monoxide has been found to be a "pollutant" under Texas law. The Court agrees. In *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d 452, 454-56 (5th Cir. 2009), the Fifth Circuit, applying Texas law, specifically held that carbon monoxide was a pollutant under an insurance policy's pollutant exclusion clause, where the policy definition of pollutant was identical to that found in the insurance policy at issue herein.

It is clear from the underlying complaint that Ms. Capron is alleged to have died from carbon monoxide poisoning. However, even though the Court finds that carbon monoxide is a pollutant, the Court's analysis does not end there. Unlike the insurance policy in *Nautilus*, Carlton Towers' policy includes a hostile fire exception. If the Court finds that the allegations of the underlying complaint reasonably infer that Ms. Capron died from carbon monoxide produced from a hostile fire, the Total Pollution Exclusion would not apply and coverage would be restored. Plaintiff admits that the underlying complaint does not specifically mention a "fire." (Dkt. No. 7 at 16.) However, the underlying complaint does mention that "dangerously high levels and concentrations [of] carbon monoxide gas were vented into Ms. Jill Capron's home." (Dkt. No. 5, Ex. 1 ¶ 19.) Moreover, the underlying complaint recites that the hot water boiler was damaged due to the Freon gas leak and that it

11

was malfunctioning. (*Id.* ¶¶ 17-19.) Plaintiff argues that the fact that the carbon monoxide was produced from a malfunctioning hot water boiler left open the potential that there was some type of unintended or accidental fire that created the dangerously high levels of carbon monoxide that killed Ms. Capron. The Court finds that these are reasonable inferences logically flowing from the facts alleged in the complaint from the underlying suit against the insured. *See Gen. Star Indem. Co. v. Gulf Coast Marine Assocs., Inc.*, 252 S.W.3d at 456.

Steadfast's interpretation would vitiate the purpose of the hostile fire exception. Steadfast maintains that the allegations of the underlying complaint squarely invoke the applicability of the Total Pollution Exclusion because the complaint fails to mention a flame or fire, hostile or not. (Dkt. No. 12 at 2.) However, Steadfast's interpretation essentially means that any complaint alleging injury due to carbon monoxide poisoning is subject to the Total Pollution Exclusion if it fails to mention the word "fire," despite the potential application of a hostile fire exception based on other factual allegations in the complaint. The Court cannot agree with this interpretation, especially when it is commonly understood that carbon monoxide is produced whenever fuel such as gas, oil, kerosene, wood or charcoal is *burned*. *See also* U.S. Environmental Protection Agency, An Introduction to Indoor Air Quality Carbon Monoxide (CO), http://www.epa.gov/iaq/co.html, (last visited Feb. 9, 2010) ("Worn or poorly adjusted and maintained *combustion* devices (e.g., *boilers*, furnaces) can be significant sources" of carbon monoxide) (emphasis added). The Court has no difficulty inferring from the facts alleged in the underlying complaint that the malfunctioning hot water boiler emitted the carbon monoxide that caused Ms. Capron's death, and as such it is

reasonable to infer that the hot water boiler utilized a flame or fire to produce the carbon monoxide. *See Gulf Coast Marine Assocs., Inc.*, 252 S.W.3d at 456 (stating that the court is not required to ignore those inferences logically flowing from the facts alleged in the complaint from the underlying suit).

Thus, the only question unresolved is whether the underlying complaint left open the potential that the fire within the hot water boiler was hostile. The Court finds that it did. A "hostile fire" has been defined by at least one Texas court as an accidental or unintended fire which is not restrained, directed or regulated by someone. *Mid-Continent*, 16 S.W. 3d at 422 (construing the phrase "hostile fire" under an insurance policy which defined "hostile fire" in an identical manner as the insurance policy herein). The underlying complaint alleges that the hot water boiler was damaged and malfunctioning, causing it to emit dangerously high levels and concentrations of carbon monoxide. The Court need not imagine factual scenarios to find that the potential existed under these facts for the flame in the boiler to be acting in an uncontrolled, unregulated manner, or that it potentially broke out from where it was intended to be. *See, e.g.*, *Schmid v. Fireman's Fund Ins. Co.*, 97 F. Supp. 2d 967, 971-72 (D. Minn. 2000) (applying hostile fire exception to malfunctioning hot water heater causing excessive levels of carbon monoxide because the fire in the water heater broke out from where it was intended to be). One could also reasonably presume that ordinarily, a properly regulated and well-maintained boiler would not produce dangerously high levels and concentrations of carbon monoxide.

Steadfast relies upon *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139 (Tex. 1997), and asserts that the Court should not "look outside the pleadings, or imagine factual scenarios which trigger coverage." *Id.* at 141. Steadfast's reliance on *Nat'l Union* is misplaced. In *Nat'l Union,* the court examined the issue of whether a truck driver's allegedly negligent discharge of a firearm, killing a passenger in another vehicle, triggered a duty to defend under the truck owner's vehicle liability policy. *Id.* at 140-41. The *Nat'l Union* court analyzed the factual allegations that the truck driver, while driving a covered vehicle, negligently discharged a firearm to cause the alleged injury, and concluded that even under the "most liberal interpretation" the allegations could not support a finding that the alleged injury "resulted from the . . . use of a covered auto" as required by the insurance policy. *Id.* at 141-42. Essentially, the *Nat'l Union* court concluded that there was nothing in the allegations to even suggest "a remote causal relationship between . . . [the covered vehicle] and [the alleged injury] . . . [which would create] that degree of doubt which compels resolution of the issue for the insured." *Id.* at 142. At the core of *Nat'l Union*'s holding is the conclusion that the court simply could not draw any reasonable inferences from the factual allegations that would create any ambiguity or doubt as to whether the alleged injury was a covered loss under the vehicle liability policy. Clearly, it would be unreasonable and illogical to infer a causal relationship between an injury caused by a firearm and the operation of a covered vehicle.

In this case, the Court finds it reasonable to infer based upon the factual allegations that the deadly amounts of carbon monoxide were potentially created by a hostile fire from a

14

malfunctioning hot water boiler. Certainly there can be allegations relating to carbon monoxide poisoning that would not lead the Court to a reasonable inference regarding the potential applicability of the hostile fire exception. For example, if the underlying complaint had alleged that Ms. Capron was exposed to carbon monoxide emitted from a properly functioning automobile, the Court would be left to conclude that it would be unreasonable to infer the potential application of the hostile fire exception. However, the relevant allegations in the underlying complaint pertaining to a "malfunctioning hot water boiler" do create a doubt based upon a reasonable inference as to the applicability of the hostile fire exception, and that doubt must be resolved in favor of the insured. *See Gore Design*, 538 F.3d at 369. Although the Court finds that Plaintiff's allegations are sufficient to survive a motion to dismiss, it should be noted that Plaintiff bears the burden to prove the applicability of the hostile fire exception. *See Century Sur. Co. v. Hardscape Constr. Specialties Inc.*, 578 F.3d 262, 265 (5th Cir. 2009) (stating that "Texas law . . . places the burden of establishing coverage upon the insured, the burden of establishing an exclusion upon the insurer, and the burden of establishing an exception to an exclusion back upon the insured."); *Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506, 507-508 (Tex. App. 1994) (holding that the insured bears the burden to prove an exception to an established exclusion).[4]

---

[4] It should be noted that practically all of the cases cited by Steadfast in support of its Motion to Dismiss are cases decided under a summary judgment standard based upon whether an insured could meet the burden of proof. *See, e.g.*, *Bernhardt v. Hartford Fire Ins. Co.*, 648 A.2d 1047, 1049 (Md. Ct. Spec. App. 1994) (finding upon summary judgment that a hostile fire exception was inapplicable because there was "simply no *evidence* . . . that the fire in the furnace became 'uncontrollable' or '[broke] out from where it was intended to be'") (emphasis added).

Thus, after a careful review of the underlying complaint, the Court cannot determine with any certainty whether as alleged the facts clearly bring the underlying suit within or without coverage under the policy. *See Gore Design*, 538 F.3d at 368-69. Although, the facts do allege that Ms. Capron died from exposure to carbon monoxide, which may invoke the Total Pollution Exclusion under the policy, the reasonable inferences drawn from the alleged facts lead the Court to conclude that the hostile fire exception to the Total Pollution Exclusion could apply.[5] Thus, the Court finds that although the underlying complaint is not precisely crafted, as alleged, the underlying complaint does contain sufficient facts to assert a loss that *potentially* falls within the insurance policy's scope of coverage, especially when it is considered that doubtful cases are to be resolved in favor of the insured. *See Gore Design*, 538 F.3d at 368-69. Therefore, because the facts alleged in the underlying complaint do not preclude coverage, the undersigned recommends that Steadfast's Motion to Dismiss based on this ground be denied.[6]

---

[5] The Court also notes that Steadfast was conscious of the *potential* of the applicability of the hostile fire exception, as it was noted by Steadfast in its Motion to Dismiss. (Dkt. No. 3 at 12, n.7.)

[6] Plaintiff also alleges that Steadfast had a duty to indemnify Carlton Towers' loss. The duty to indemnify only arises after an insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages in a lawsuit. *Collier v. Allstate County Mut. Ins. Co.*, 64 S.W. 3d 54, 62 (Tex. App. 2001) (*citing Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W. 2d 81, 82-83 (Tex. 1997)). Plaintiff has alleged that the Estate of Ms. Capron obtained a final judgment against Carlton Towers in the amount of $1,000,000.00. (Dkt. No. 2 ¶ 18.) Therefore, Plaintiff has properly alleged that Steadfast had a duty to indemnify.

### B. Whether Plaintiff Alleged Sufficient Facts to State a Claim for Breach of Contract.

While the heart of Steadfast's Motion to Dismiss rests on its argument that it did not have a duty to defend, Steadfast also argues that Plaintiff's Complaint fails to allege sufficient facts to state a claim upon which relief may be granted. (Dkt. No. 3 at 4.) Specifically, Steadfast asserts that the Complaint fails to include facts showing that the loss was covered by the policy or that Carlton Towers is an insured under the policy. (*Id.*)

Under Texas law, a claimant in an action for breach of contract must show the existence of a contract between the parties, that the contract created duties, that a breach of the duties occurred, and that the party sustained damages. *See Certain Underwriters at Lloyd's Subscribing to Policy No. WDO-10000 v. KKM Inc.*, 215 S.W. 3d 486, 489 (Tex. App. 2006). An insured cannot recover under an insurance policy unless facts are pleaded and proved showing that damages are covered by his policy. *Employers Cas. Co. v. Block* 744 S.W.2d 940, 944 (Tex. 1988), *overruled on other grounds by State Farm Fire and Cas. Co. v. Gandy*, 925 S.W. 2d 696, 714 (Tex. 1996).

The Court finds that Plaintiff stated a cause of action for breach of contract. In the instant Complaint, Plaintiff alleges that Carlton Towers is an insured under a policy of insurance issued by Steadfast. (Dkt. No. 2 ¶ 9.) The Court must accept this factual allegation as true. Moreover, Steadfast concedes that the policy (which was attached to the Complaint) lists as additional insureds the owners of certain properties, to include the property involved here which Carlton Towers developed. (Dkt. No. 3 at 13; Dkt. No. 2, Ex. 1 at 19.) Thus, the Court finds that Plaintiff alleged the existence of a valid contract between Carlton Towers and Steadfast.

Second, Plaintiff alleges that Steadfast had a duty to defend Carlton Towers in the underlying suit involving Ms. Capron and Carlton Towers. (Dkt. No. 2 ¶ 24.) Plaintiff alleges that the policy was in full force and effect during the time relevant to that dispute. (*Id.* ¶ 10.)

Next, Plaintiff alleges that Ms. Capron died as a result of Carlton Towers' negligence, and that the policy coverage applied to bodily injury and property damage caused by occurrences that took place where Ms. Capron lived. (*Id.* ¶¶ 11, 13-14.) While the Complaint does not allege specific facts as to the nature of Ms. Capron's death, Steadfast concedes that an allegation of "negligence" may be covered as a non-excluded "occurrence" under the policy. (Dkt. No. 3 at 6.) Still, Steadfast maintains that the Complaint is "devoid of any facts describing how Jill S. Capron died." (*Id.*)

Ordinarily, the conclusory assertion or 'threadbare recital' that a party was negligent, without additional facts to support such an allegation, would fail to state a claim upon which relief may be granted. However, in this case it is undisputed that the facts concerning Ms. Capron's death (which gave rise to the allegation of negligence against Carlton Towers) are alleged in the underlying complaint. Steadfast asked this Court to take judicial notice of those facts in an effort to have this case dismissed, yet would have this Court ignore those facts in considering Plaintiff's breach of contract Complaint. As previously stated, the Court finds it proper to consider the underlying complaint as part of the pleadings and the Court will therefore consider it for all purposes. *See Avado*, 187 F.3d at 1281 n.16; FED. R. CIV. P. 10(c). The Court has already found that the underlying complaint contains allegations concerning Ms. Capron's death sufficient to potentially invoke the duty to defend against Steadfast in light of Carlton

18

Towers' insurance policy. As such, the Court finds that there are sufficient facts alleging that the loss was covered by the policy due to Carlton Towers' alleged negligent actions.

Plaintiff further alleges that the insurance policy provides that Steadfast "will pay those sums that the insured becomes legally obligated to pay as 'damages' because of 'bodily injury' and 'property damage' to which this insurance applies. [Steadfast] will have the right and duty to defend the insured against any 'suit' seeking those 'damages'." (*Id.* ¶ 12.) Plaintiff alleges that it timely notified Steadfast of the Capron lawsuit and demanded that Steadfast defend it. (*Id.* ¶ 16.) Plaintiff alleges Steadfast breached its contractual duties because it denied coverage for the claims, and refused to defend or indemnify Carlton Towers. (*Id.* ¶¶ 17, 25-26.) Finally, Plaintiff alleges that Carlton Towers suffered damages because a $1,000,000.00 final judgment was obtained by the Estate of Ms. Capron against Carlton Towers. (*Id.* ¶¶ 18, 28.)

Based on the allegations of the Complaint discussed above, the Court finds that Plaintiff has sufficiently plead the elements for a cause of action for breach of contract and that the Complaint's allegations "plausibly suggest that the plaintiff has a right to relief." *James River Ins. Co.*, 540 F.3d at 1274. Accordingly, the undersigned recommends that Steadfast's Motion to Dismiss for failure to state a claim based on the above-discussed grounds also be denied.

### IV. *Conclusion*

For the foregoing reasons it is **RECOMMENDED** that Steadfast's Motion to Dismiss (Dkt. No. 3) be **DENIED**.

**IT IS SO REPORTED** at Tampa, Florida, this 18th day of March, 2010.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

**Copies furnished to:**

Honorable Steven D. Merryday

Counsel of Record